UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-325 (ECT/JFD)

UNITED STATES OF AMERICA,

        Plaintiff,         **PLEA AGREEMENT AND SENTENCING STIPULATIONS**

v.

RUBEN CAZARES,

        Defendant.

The United States of America and defendant Ruben Cazares (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.   **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. The defendant fully understands the nature and elements of the crime with which he has been charged. The government agrees to dismiss Count 2 at the time of sentencing.

2.   **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1

Beginning in or about July 2022 and continuing through on or about October 2022, the defendant entered into an agreement or understanding with others, including his co-defendant, in the State and District of Minnesota and elsewhere, to distribute methamphetamine. The defendant voluntarily and intentionally joined in the agreement, and knew the purpose of the agreement was to distribute controlled substances. As part of the conspiracy, the defendant was involved in distributing methamphetamine.

On July 20, 2022, an undercover police officer contacted a source of supply based in Mexico to arrange for the purchase of methamphetamine. The source agreed to sell the undercover officer 500 grams of methamphetamine for $2,900. The source instructed the undercover officer to give "them" (the runners delivering the drugs) $2,300 and send the rest of the payment via Western Union. The undercover officer and the source arranged for the transaction to take place at a restaurant in Shakopee, Minnesota.

The undercover officer went to the meeting location in Shakopee and waited. Meanwhile, surveillance officers in the area observed the defendant meet with his co-defendant Michael Carrillo ("Carrillo") and the two enter a nearby hotel together. The defendant then exited the hotel and got into a vehicle. Carrillo came out of the hotel a short time later carrying a black backpack. Carrillo then walked across the street and got into the undercover officer's vehicle.

The undercover officer handed Carrillo the buy money and Carrillo presented the undercover officer with two bags containing a total of about 1,000 grams of

methamphetamine—twice as much as the undercover officer had ordered. The undercover officer attempted to call the source of supply, while Carrillo attempted to call the defendant. As they were doing so, the defendant pulled up next to the undercover officer's vehicle and instructed Carrillo to "just give him one of the bags man." The undercover officer asked the defendant if both bags were the same weight and he said: "yeah it's the same." Carrillo then sold the undercover officer one of the bags, which was found to contain about 498 grams of methamphetamine.

The defendant agrees he committed these acts voluntarily, knew he was dealing in controlled substances, and knew his conduct was unlawful. In total, defendant agrees his personal conduct involved more than 500 grams of methamphetamine.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to

confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.   **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.   **Statutory Penalties**. The defendant understands that Count 1 of the Indictment (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846) is a felony offense that carries the following statutory penalties:

    a.   a mandatory minimum of 10 years in prison;

    b.   a maximum of life in prison;

    c.   a supervised release term of at least 5 years up to a maximum supervised release term of life;

    d.   a maximum fine of $10,000,000;

    e.   assessment to the defendant of the costs of prosecution,

imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920;

f. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A); and

g. the possible loss of eligibility for federal benefits pursuant to 21 U.S.C. § 862(a)(1).

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

a. <u>Base Offense Level</u>. The parties agree that the base offense level may vary based on the purity of the methamphetamine involved in the offense. Depending on the purity, the base offense level could be **as low as 30** (based on his involvement with at least 500 grams but less than 1,500 grams of methamphetamine mixture) or **as high as 34** (based on his involvement with at least 500 grams but less than 1,500 grams of actual (pure) methamphetamine. U.S.S.G. § 2D1.1(c)(3), (5).

b. <u>Specific Offense Characteristics (Safety Valve)</u>. The defendant believes that he may—at the time of sentencing—meet the criteria set forth in U.S.S.G. § 5C1.2(a). If the Court determines that the defendant meets these criteria, the parties agree that the defendant should receive a **2-level reduction** of the base offense level. U.S.S.G. § 2D1.1(b)(18). The defendant understands, however, that the final determination of whether he meets the criteria of U.S.S.G. § 5C1.2(a) will be made by the Court, and the United States reserves its right to argue that the defendant does not meet those criteria.

c. <u>Specific Offense Characteristics</u>. Except as stated herein, the parties agree that no other specific offense characteristics apply.

d. <u>Chapter 3 Adjustments</u>. The government believes that the offense level should be **increased by 2 levels** because the defendant was an organizer, leader, manager, or supervisor in the criminal activity. U.S.S.G. § 3B1.1(c). The defendant, however, does not agree to the application of this enhancement and reserves his right to contest it at the time of sentencing.

e. <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive **a 2-level reduction** for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an **additional 1-level reduction** pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report.

f. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into **Criminal History Category I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

g.  Guidelines Range. Based on the foregoing, the total offense level could be as low as 25 or as high as 33. If the criminal history category is **I**, the Sentencing Guidelines range could be **as low as 57-71 or as high as 135-168 months of imprisonment**.

If the defendant is determined to meet the criteria of 18 U.S.C. § 3553(f)—as amended by Section 402 of the First Step Act, passed in December 2018—the parties agree he may be sentenced without regard to the statutory mandatory minimum sentence for Count 1. If, however, the defendant is determined not to meet the criteria of U.S.S.G. § 5C1.2(a) and 18 U.S.C. § 3553(f), the Guideline range cannot in any event be lower than **120 months** due to the otherwise applicable mandatory minimum sentence for Count 1.

h.  Fine Range. If the adjusted offense level is **25,** the Sentencing Guidelines fine range is **$20,000 to $10,000,000**. If the adjusted offense level is **33**, the Sentencing Guidelines fine range is **$35,000 to $10,000,000**. U.S.S.G. § 5E1.2(c).

i.  Supervised Release. The Sentencing Guidelines require a term of supervised release of at least 5 years up to a maximum supervised release term of life. U.S.S.G. § 5D1.2.

8.  **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12.   **Forfeiture.**  The defendant agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of that offense.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property.  The defendant withdraws any claim or petition he has filed with respect to the above-described property and waives all statutory and constitutional defenses to its forfeiture.

The defendant also agrees that the United States may forfeit any and all other property subject to forfeiture as a result of the defendant's plea by any means provided by law.

13.   **FOIA Requests.**  The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

14. **Complete Agreement.** The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: April 13, 2023

For:
BY: _____
NATHAN H. NELSON
Assistant United States Attorney

Date: 4-13-2023

_____
RUBEN CAZARES
Defendant

Date: 4·13·2023

_____
STEVEN WRIGHT, Esq.
Counsel for Defendant